**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2024**

# In the Court of Appeals of Georgia

A23A1588. HEATON ERECTING, INC. et al. v. GIERUM.

LAND, Judge.

In this workers' compensation case, the superior court affirmed the temporary total disability award of the appellate division of the State Board of Workers' Compensation to Steven Gierum. We granted a discretionary appeal from Gierum's employer, Heaton Erecting, Inc., and Amerisure Mutual Insurance Company (collectively, "appellants"), who now argue that the superior court erred in applying the "concurrent dissimilar" employment doctrine and in applying an "any evidence" standard of review to the findings of the appellate division. We disagree and affirm.

"In reviewing a workers' compensation award, both the appellate court and the superior court must construe the evidence in the light most favorable to the party

prevailing before the appellate division of the State Board of Workers' Compensation." (Citation and punctuation omitted.) *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007). "If any evidence supports the appellate division's findings, those findings are binding and conclusive, and neither this Court nor the superior court may substitute itself as the fact finding body." (Punctuation and footnote omitted.) *Medical Office Mgmt. v. Hardee*, 303 Ga. App. 60, 67 (2) (b) (693 SE2d 103) (2010). "However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review." (Footnote omitted.) *McLendon v. Advertising That Works*, 292 Ga. App. 677, 677-678 (665 SE2d 370) (2008).

So viewed, the record shows that Gierum and his wife are originally from New York, where Gierum worked as a union crane operator/engineer. Because of the nature of Gierum's work, there were periods where he had no jobs to complete. In late 2017 or early 2018, the Gierums formed Qualassure, a "mom and pop" home renovation business, to supplement their income. The Gierums ran the small business together, with Gierum's wife generally in charge of marketing while Gierum performed the physical work of home renovations or coordinated work by

2

subcontractors. If Gierum's wife "need[ed] him to," Gierum would also "do social media" or provide estimates over the phone.

In March 2020, the Gierums moved to Georgia and incorporated Qualassure in the state. Their move to Georgia coincided with the COVID-19 pandemic, and Gierum's wife testified that although she and her husband were still employed at Qualassure, "it took a little bit for it to start back up again" because "[n]obody wanted . . . anybody in the house."

The Gierums continued to bid on projects but were unsuccessful, and in May 2020, Gierum began working for Heaton Erecting as a crane operator/engineer. Shortly thereafter, in August 2020, Gierum's wife underwent emergency surgery and Gierum took a month of leave to care for his wife and children. Gierum did not have paid time off with Heaton, and the family was without a source of income. During this time, the Gierums continued to do "preliminary" work for Qualassure to generate business, and by late September, Qualassure had its first project in Georgia.

Gierum returned to work at Heaton on or about September 13, 2020. On September 16, he injured his sacroiliac joint while driving his crane to a job.[1] As a

---

[1] Appellants do not dispute that Gierum's injury arose out of and in the course of his employment.

result of his injury, Gierum was unable to work as a crane operator because he could not sit in a cramped position for extended periods of time, and he began to draw temporary total disability benefits ("TTD") based solely on his income from Heaton. Gierum was, however, able to continue to perform work as a handyman for Qualassure. In the fall of 2020, Gierum completed projects for individual homeowners and as a sub-contractor for his brother-in-law's construction company, Melo and Sons Construction ("Melo").

On December 7, 2020, Gierum returned to work at Heaton performing light-duty work as an administrative assistant. See OCGA § 34-9-240; Ga. Workers' Compensation Board Rule 240. His temporary total disability benefits were suspended at that time. After fifteen days,[2] Heaton conducted a "general layoff" of Gierum and another employee, who returned to work weeks later. Gierum was subsequently terminated on or about January 6, 2021.

Gierum requested a hearing before the Board seeking, among other things, the recommencement of temporary total disability (TTD) benefits from January 6, 2021,

---

[2] Pursuant to Board Rule 240 (c), "[s]hould the employee accept the employment offer[ of suitable employment] by the employer/insurer . . . but fail to continue working for more than the prescribed fifteen (15) scheduled work days, the employer/insurer . . . shall immediately reinstate payment of income benefits."

4

the designation of Dr. Keith Osborn as the authorized treating physician, and an award of assessed attorney fees. Appellants sought repayment of TTD benefits paid by them from September 16, 2020 to December 8, 2020, arguing that Gierum had worked for other employers, Qualassure and Melo, earning a wage in excess of his pre-injury average weekly wage. Appellants also requested denial of further workers' compensation wage benefits continuing from January 6, 2021, on the basis that Gierum had returned to work for Qualassure and Melo, earning more money than he was making before his work accident with Heaton.

After a hearing, an administrative law judge ("ALJ") concluded that Gierum was entitled to ongoing TTD wage benefits and medical treatment. The ALJ denied appellants' request for repayment of previously paid TTD benefits, finding that although there was a "gap in reestablishing Qualassure after the move to Georgia," the pandemic and Gierum's wife's incapacity after major surgery was a "credible explanation" for that gap. The ALJ found that Gierum had worked for "several years" as a crane operator in New York while maintaining Qualassure, which represented a "pattern" of concurrent employment prior to his work at Heaton. Accordingly, the ALJ concluded that Gierum's work with Qualassure and his crane

operator work with Heaton were concurrent dissimilar employment, and appellants could not receive any credit for Gierum's post-accident earnings at Qualassure.

Appellants filed an appeal to the appellate division of the State Board of Workers' Compensation. After a hearing, the appellate division adopted the ALJ's findings of fact, conclusions of law, and the ALJ's award. Appellants' motion for reconsideration was denied. Pursuant to OCGA § 34-9-105, Appellants timely filed an appeal to the Gwinnett County Superior Court. After a hearing, the trial court affirmed the appellate division's order. This court granted appellants' application for discretionary appeal, and this appeal followed.

1. Appellants argue that the trial court erred in applying the concurrent dissimilar employment doctrine because there was no evidence that Gierum (a) earned any wages or (b) performed any work at Qualassure in the thirteen weeks preceding his work accident with Heaton.[3] Specifically, appellants argue that under our Supreme Court's opinion in *Fulton County. Bd. of Ed. v. Thomas*, 299 Ga. 59 (786 SE2d 628) (2016), employment that was not performed and for which wages were not earned

---

[3] Appellants also argue that the trial court erred in finding that Gierum's work for Melo was concurrent with Heaton. However, the trial court's order does not make any finding with regard to Melo.

within the thirteen weeks prior to a work injury cannot be "concurrent" employment as a matter of law. Accordingly, appellants argue that Gierum's work with Qualassure was not concurrent with his accident and that they are entitled to repayment for the wages earned by Gierum's work with Qualassure after his accident.

"[T]he workers' compensation law is a humanitarian measure to be construed liberally, and its purpose is to provide compensation for an injured employee in proportion to his loss of future earnings on account of the injury." (Citation and punctuation omitted.) *Ware County. Bd. of Ed. v. Taft*, 350 Ga. App. 848, 850 (830 SE2d 326) (2019). Under the version of OCGA § 34-9-261 in effect at the time of Gierum's injury, "while the disability to work resulting from an injury is temporarily total, the employer shall pay or cause to be paid to the employee a weekly benefit equal to two-thirds of the employee's average weekly wage but not more than $500.00 per week . . . ." OCGA § 34-9-261. The employee's average weekly wage is calculated pursuant to methods set forth in OCGA § 34-9-260, which provides in pertinent part:

> (1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be

one-thirteenth of the total amount of wages earned in such employment during the 13 weeks[.]

In the workers' compensation context, "[e]mployment . . . means the type or kind of employment, such as that of janitor, baker, truck driver, etc." *Black v. Am. & Foreign Ins. Co.*, 123 Ga. App. 133, 134-135 (2) (179 SE2d 679) (1970). Thus, employment "refers to the particular calling or kind of employment in which the claimant was engaged at the time of [his] injury." (Citation and punctuation omitted.) *Thomas*, 299 Ga. at 62 (1). Although "OCGA § 34-9-260 (1) itself does not contain the word 'concurrent,'" Georgia recognizes the doctrine of concurrent similar employment, under which "a claimant working multiple *similar* jobs *at the time* [he] sustains a compensable injury is entitled to have [his] wages earned from all such jobs included in calculating [his] average weekly wage." (Emphasis supplied.) *Thomas*, 299 Ga. at 64, 60 (2016). Thus, "the doctrine requires a 'concurrence' of similar jobs within the 13-week period" referenced in the statute. Id. at 64.

On the other hand, if an employee's other work is dissimilar to the employment in which he sustained a work injury, his wages from the dissimilar work are not included in the calculation of his disability benefits. See *Owens-Illinois, Inc. v. Lewis*,

8

150 Ga. App. 640, 641 (3) (258 SE2d 293) (1979) (although "appellee was engaged in another business . . . it was not concurrent similar employment, [and the Board] refused to take appellee's income from such business into account in establishing appellee's measure of damages"). As a result, an employer is not entitled to any "credit" of post-injury wages earned by the claimant in his dissimilar employment. See id. at 641 (1) (B) (because "appellant was not engaged in concurrent similar employment, appellant's contention that it should be given credit for appellee's concurrent similar employment is without merit.") (citation omitted).

Here, appellants argue that they are entitled to a credit from Gierum's post-injury work with Qualassure because Gierum did not earn any wages from Qualassure in the 13 weeks prior to his injury at Heaton. However, it is undisputed that Gierum's work with Qualassure was dissimilar, and the concurrent similar employment doctrine does not apply. The record contains some evidence that, at the time of his accident at Heaton, Gierum was employed both as a crane operator/engineer with Heaton and as a handyman with Qualassure. Gierum performed work with Qualassure when he lived in New York. Upon their move to Georgia, he and his wife worked, albeit without the immediate receipt of pay, to generate business for Qualassure, and despite the ongoing

9

pandemic and his wife's surgery, they were successful in obtaining work for the business by late September 2021. While payment may be indicative of employment, it is not conclusive. See *Housing Auth., City of Cartersville v. Jackson*, 226 Ga. App. 182, 183 (2) (486 SE2d 54) (1997) (inferring employment relationship under the Workers' Compensation Act with acting executive director who was not paid because the Housing Authority received valuable services from him). Thus, there was evidence to support the ALJ's finding that "there was credible explanation of the early days of [the] pandemic and the wife's surgery to explain why Qualasure [sic] work was not immediately resumed when they moved to Georgia." Accordingly, although Gierum was not earning income from Qualassure in the months prior to his accident at Heaton, we conclude that he was nonetheless concurrently self-employed with Qualassure, and appellants are not entitled to any credit from Gierum's post-injury work with Qualassure. See *Black*, 123 Ga. App. at 134-135 (2) (employee's second job was not similar and thus could not be considered in calculating workers' compensation award).

2. Appellants argue that the trial court incorrectly applied an "any evidence" standard of review because "erroneous applications of law to undisputed facts, as well

as decisions based on erroneous theories of law, however, are subject to the de novo standard of review." *Stokes v. Coweta County. Bd. of Ed.*, 313 Ga. App. 505, 506 (722 SE2d 118) (2012).

"We presume that the trial court knows the law and faithfully performs its duties." *Metro. Atlanta Rapid Transit Auth. v. Thompson*, 326 Ga. App. 631, 633 (1) (757 SE2d 228) (2014). Although the trial court stated that "[t]he standard of review at the Superior Court level is governed by the any evidence rule," it also stated that the Board's finding that Gierum was concurrently employed with Qualassure was "supported not only by fact, but by law." "There is no evidence in the record affirmatively showing that the superior court applied the wrong standard of review, and we will not presume error." Id. See also *MXenergy Inc. v. Ga. Public Svc. Comm.*, 310 Ga. App. 630, 633 (1) (714 SE2d 132) (2011) (no error presumed simply because trial court's order did not contain the words "de novo review").

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*